**SMILEY WANG-EKVALL, LLP**
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:   714 445-1000
Facsimile:    714 445-1002

Attorneys for Palo and Crystal Plesnik

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>BV Glendora LLC, a Colorado limited liability company,<br><br>                    Debtor. | Case No. 2:21-bk-11627-BB<br><br>Chapter 11<br><br>**OBJECTION TO DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED CHAPTER 11 PLAN**<br><br>**Confirmation Hearing Information:**<br>**DATE:**    **December 16, 2021**<br>**TIME:**    **10:00 a.m.**<br>**CTRM:**    **1539**<br>             255 E. Temple Street<br>             Los Angeles, California 90012 |

2890104.1                                                                                                                          OBJECTION

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE:**

Secured Creditors Palo Plesnik and Crystal Plesnik, aka Crystal Huang (together, the "Plesniks"), hereby submit this objection (the "Objection") to the *Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan* [Docket No. 94] (the "SADS") of BV Glendora LLC (the "Debtor") in support of its *Second Amended Chapter 11 Plan* [Docket No. 95] (the "Second Amended Plan").

## I.  INTRODUCTION

The Debtor's plan becomes less believable and more speculative with each iteration. The Court dispensed with the hearing on the Debtor's to-be-further-amended disclosure statement because the Debtor was to make a handful of straightforward revisions. First, the Debtor did not make each of the required amendments. Second, the Debtor made a significant change that was not contemplated—the Debtor altered its underlying business plan. In terms of adequate information, the SADS is a step backwards. The SADS describes a new (but still speculative) strategy and provides less information related thereto.

The Court's order approving the SADS set November 2, 2021, as the deadline to file an objection to the SADS. (*See* Order [Docket No. 96] at 2, ¶ 2.) As instructed by the Court, this Objection focuses on issues that arise from the amendments to the First Amended Disclosure Statement [Docket No. 82] (the "FADS") and the First Amended Plan [Docket No. 83] (the "First Amended Plan"), and the Debtor's failure to make changes required by the Court in its tentative ruling for the October 13, 2021 hearing on the FADS (the "Tentative Ruling") or on the record. The Plesniks continue to assert that this case was filed in bad faith and Debtor's plan is proposed in bad faith, and is not feasible or fair and equitable (among other deficiencies). The Plesniks respectfully incorporate their prior objections by this reference and reserve their rights to raise issues not set forth herein in connection with the plan confirmation hearing.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2890104.1                    1                    OBJECTION

## II. THE DEBTOR HAS CHANGED ITS STRATEGY

### A. The Debtor's New Strategy is Not Feasible

The Debtor's sole asset is vacant commercial property that generates no income. The Debtor previously intended to demise the Property into two new "fully leasable" shells. (*See* FADS at 8.) The FADS included a now-deleted "conceptual budget" projecting that such work would cost $1,087,670. (*See* FADS, Ex. A at 37.) This cost was in addition to (1) the Debtor's projected post-confirmation losses from operations during the first three years of the plan in the amount of $958,392, and (2) further tenant improvements in the amount of $961,170. (*See* SADS, Ex. A at 2-6 of 13; *see also id.*, Ex. C at 25 of 33.) Thus, according to the FADS, the total post-petition cost that the Debtor needed to fund was $3,007,232.

Cadence has not committed to providing the Debtor with funding in any amount. Nor is it required by the plan to do so. At most, Cadence may provide up to $1,000,000, leaving the Debtor with a significant, multi-million dollar shortfall. (*See* Obj. to FADS at 1-3.) Nevertheless, through the hearing on the FADS, the Debtor asserted that tenants it had yet to secure would finance the entirety of the cost to develop the Property.

The Debtor has changed its strategy. Now, the Debtor intends to lease the Property "in its existing state . . . ." (*See* SADS at 8.) The Debtor did not state its intention to make this change to the FADS during the hearing thereon. Rather, the Debtor continued to assert that its prior strategy was feasible. The Debtor's amendments confirm that the Plesniks' position was correct from the beginning—the Debtor's plan is not feasible and the Debtor's arguments to the contrary were incorrect.

The Second Amended Plan is not feasible. As the Debtor's change in approach demonstrates, the Debtor has no concrete strategy; the Debtor is grasping for straws. While the Debtor changed its strategy, the underlying problem remains the same—the Debtor lacks the plan funding it needs. Due to Cadence's unwillingness to adequately fund the Debtor, the Debtor still expects that the entirety of the cost to improve the Property and bring it to a leasable state will be borne by the tenants. However, the SADS does not identify any tenants willing to lease the Property "as is," pay rent in the necessary amounts, and make all improvements at their own

1  expense. Like the prior version, the SADS is dependent on funding from tenants that the Debtor
2  does not have and needs one and a half years post-confirmation to potentially find. (*See* SADS at
3  9:3-4, stating that the Debtor expects to need an eighteen month period to obtain tenants.) The
4  Debtor's plan continues to be wholly speculative due to the Debtor's lack of necessary funding.

5        **B.**      <u>**The SADS Lacks Adequate Information Regarding the Debtor's New Strategy**</u>

6        The Debtor's change in strategy renders the information provided in the SADS inadequate.
7  First, the Court's Tentative Ruling stated that the Debtor "should disclose the total amount of
8  financing that the debtor needs to locate to make its plan work . . . ." (*See* Ex. 1.) The amount of
9  financing that Cadence *may* provide would, at most, cover the Debtor's projected post-petition
10 losses (assuming the Court confirms the plan as is). The SADS states that all improvements will
11 be paid by the tenant. (*See* SADS at 9:1-2.) While the Debtor no longer intends to demise the
12 Property, according to the SADS, work to the Property still needs to be done. (*See* SADS at 9:4-5,
13 stating that Property needs to be entitled, permitted, and built out.) However, the SADS does not
14 contain a budget or other information regarding the cost of the work needed for the Property. The
15 "conceptual budget" supporting the FADS was removed and nothing was substituted in its place.
16 Thus, the SADS lacks sufficient information regarding the amount of financing the Debtor
17 projects to need from tenants to improve the Property.

18       Second, the SADS contains conflicting information regarding the amount of rent projected
19 by the Debtor's new strategy. The Debtor claims that, under its new strategy, the Property will
20 generate net cash of $102,650 in year 4, $106,194 in year 5, $128,363 in year 6, and $152,367 in
21 year 7 of the Second Amended Plan as set forth in Exhibit "A." (*See* SADS at 9:6-8.) However,
22 according to Exhibit "A," the Debtor's projected net cash flow is far less than stated in the body of
23 the SADS: $13,250 in year 4; $594 in year 5; $563 in year 6; and $120,039 in year 7. (*See id.*, Ex.
24 A at 11 of 13.) The Debtor projects to lose $5,905,729 in total post-confirmation. (*Id.*)
25 Moreover, it appears that the sole source of all of this information is Mr. Rothacker, whose prior
26 testimony has been proven to be entirely unreliable.

27       Unless the Court believes a further hearing is necessary, the Plesniks request that the
28 version of the SADS served (1) include a budget of the cost to improve the Property and bring it

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

from its current state to a leasable state, and (2) correct the conflicting information concerning the projected net cash to be generated post-confirmation.

### III. FURTHER INFORMATION REGARDING THE POST-PETITION PAYMENTS TO UNSECURED CREDITORS IS REQUIRED

The Debtor was required to disclose the post-petition payments by Cadence on account of the Debtor's pre-petition debt. The SADS includes a disclosure on this point. (*See* SADS at 7.) However, the issues identified by the Plesniks in their objection to the FADS remain.

First, as with the FADS, the SADS conflicts with the Debtor's prior statements under oath. The SADS reflects balances owing for creditors that have been paid in full. The alleged claims for Dasher & Tabata and Tait & Associates were addressed in the Plesniks' prior objection. (*See* Obj. to FADS at 4:19 to 5:7.) The Debtor added a third creditor to its unsecured creditor class, DK Design Workshop, Inc. ("DK"), claiming it is owed $700. However, DK was owed $9,380 and was paid that amount post-petition. (*Compare* Schedules [Docket No. 12] at 14 of 29; *with* SADS, Ex. F at 9 of 10, reflecting post-petition payments to the Debtor totaling $9,380; May 2021 MOR at 5 of 28.) The Debtor has yet to reconcile its conflicting statements. (*See* Obj. to FADS at 5, lines 18-21.)

Second, the SADS is further proof that the Debtor is attempting to manufacture an impaired consenting class. (*See* Obj. to FADS at 4:4-18.) According to the SADS, Cadence paid the Debtor's prepetition unsecured debt because it has "*important* relationships" with the creditors. (*See* SADS at 7 (emphasis added).) Cadence made payments to each of the Debtor's non-insider pre-petition general unsecured creditors. (*See* May 2021 MOR at 5 of 28; *see also* SADS, Ex. F.) Yet, notwithstanding the alleged importance of Cadence paying the Debtor's general unsecured creditors, it left small balances owing to three creditors to be paid under the Plan in full in three

years.[1]  (*See* SADS at 16.)  Cadence has not explained why it left small balances owing to three creditors.

## IV. THE DEFAULT PROVISION MUST BE REVISED

As required by the Court, the SADS now provides that Plesniks may foreclose "upon default by the Debtor of the provisions of the Plan. . . ."  (*See* SADS 14-15.)  However, the Debtor did not make conforming changes to the separate default provision, Section III.F. of the SADS and Section III.A. of the Second Amended Plan (the "Default Provision").  The revision to the SADS potentially conflicts with the Default Provision.  And, as previously argued by the Plesniks, the Default Provision conflicts with the Court's order approving the Proposed Insider Financing [Docket No. 77] (the "Financing Order").  (*See* Obj. to FADS at 7:24-8:12.)

The Default Provision should be replaced with the following language:

> The Plesniks may immediately accelerate their debt and exercise their remedies under state law (including foreclosure upon their collateral), upon the Debtor's default of the provisions of the Plan, including, without limitation, due to the Debtor's failure to make a monthly or other payment when required by the Plan.  In addition, the Debtor and/or Cadence shall provide the Plesniks with prompt written notice of any event of default under the Debtor-In-Possession Revolving Loan Promissory Note attached to the Disclosure Statement as Exhibit "D" (the "Cadence Facility") or if the Cadence Facility (or Cadence's obligations thereunder) is/are terminated or all amounts loaned by Cadence become due and payable.  Upon the occurrence of an event of default under the Cadence Facility or if the Cadence Financing (or Cadence's obligations thereunder) is/are terminated or all amounts loaned by Cadence become due and payable, then, without further order of the Court, notice or hearing, the Plesniks are permitted to immediately accelerate their debt and exercise their rights and remedies under state law, including, without limitation, to foreclose on the Glendora Property, and they are granted relief from any bankruptcy stay or injunction in order to do so.  If the Debtor has not refinanced or sold the Glendora Property and/or paid all secured claims (classes 1,2 and 3) in full 84 months after the Effective Date, the Debtor shall have 120 days thereafter to refinance or sell the Glendora Property and/or pay all secured claims unless excused by the secured creditor, else the Plesniks may immediately accelerate their debt and foreclose on the Glendora Property.

---

[1] The new Exhibit "F" to the SADS also indicates that Cadence is paying for post-petition services for professionals that were not employed by the estate.  (*See* SADS, Ex. F at 8 and 9 of 10.)

The Plesniks objected to the last sentence of the Default Provision in the FADS and continue do so.  (*See* Obj. to FADS at 8:13-22.)  However, the Plesniks include this sentence in the suggested paragraph above because the Debtor was not ordered to remove it as part of the ordered changes to the FADS.  The Plesniks reserve all rights with respect to this provision in connection with the confirmation hearing.

### V.  FURTHER CHANGES ARE REQUIRED TO PRESERVE THE PLESNIKS' LIENS

The SADS states that the Plesniks "shall retain their lien on the Glendora Property until their claim, [sic] is paid in full." (*See* SADS at 15.)  Two additional changes are required.  First, the Plesniks lien is not limited to the Property, but includes additional property, including any rents generated by the Property.  The SADS and the Second Amended Plan should state that the Plesniks retain their liens on all their collateral as provided in the note and deed of trust attached to the Plesniks' proof of claim.  Second, Section V.C. in the SADS and Section IV.C. in the Second Amended Plan should state that "the confirmation of the Plan revests all of the property of the estate in the Debtor, subject to the liens of the Plesniks."

### VI.  CONCLUSION

The Plesniks believe this case should be dismissed.  However, if the Court is inclined to proceed with the confirmation hearing, they respectfully request that the Court order the version of the SADS served on creditors to be revised as set forth herein.

DATED: November 2, 2021        SMILEY WANG-EKVALL, LLP

By: */s/ Robert S. Marticello*
ROBERT S. MARTICELLO
MICHAEL L. SIMON
Attorneys for Palo and Crystal Plesnik

# EXHIBIT "1"

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Sheri Bluebond, Presiding
Courtroom 1539 Calendar

**Wednesday, October 13, 2021**  Hearing Room  **1539**

**2:00 PM**
**2:21-11627**    **BV Glendora LLC, a Colorado limited liability comp**    **Chapter 11**

#203.00    Debtor's First Amended Disclosure Statement Describing First Amended Chapter 11 Plan

Docket    82

**Courtroom Deputy:**

ZoomGov Appearance by:

10/4/21 - Marc Forsythe

**Tentative Ruling:**

Plesnik's objections appear well taken.  In addition to the points raised in the objection, the court noted the following concerns in its own review (some of which were also raised in the Plesnik's objection):

1.  There is still no discussion of the LaSalle issue.  Consent would eliminate that as a problem, but it does not appear that the Plesniks plan to vote for the plan.
2.  The plan doesn't disclose how large the balloon is likely to be even if the debtor fully performs under the plan. According to the court's calculations, if the debtor actually made payments at 4.75 percent on a $3,000,000 claim amortized over 30 years, the monthly payments would be approximately $15,649.42.  The debtor is proposing to pay $2,500 per month for 84 months.  This means that, each month, the debtor will be adding more than $13,000 to the amount of the principal, which will itself then bear interest.  Has the debtor performed the calculations to show how much it will actually need to pay by the end of 84 months?  (FYI -- a monthly payment of $2,500 is approximately enough to service a debt of $475,000 with interest at the rate of 4.75 percent amortized over 30 years.  Has any court ever approved a plan that provided for negative amortization that is this extreme?)
3.  The only option contemplated by the plan in the event the debtor defaults prior to 84 months is conversion or dismissal.  The default provisions of the plan should permit foreclosure if debtor does not remain current on the payments due during the 84 months.
4.  Court was unable to locate any discussion of how the debtor arrived at the

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Sheri Bluebond, Presiding**
**Courtroom 1539 Calendar**

**Wednesday, October 13, 2021**     Hearing Room    **1539**

2:00 PM
**CONT...**     **BV Glendora LLC, a Colorado limited liability comp**     **Chapter 11**
amount of the $100,000 new value payment.
5. Court agrees that the body of the disclosure statement should disclose the total amount of financing that the debtor needs to locate in order to make its plan work and what the debtor plans to do about the fact that it has only located a lender who may be willing to advance up to $1,000,000.

Hearing required.

| Party Information |
|---|

**Debtor(s):**

    BV Glendora LLC, a Colorado        Represented By
                                                 Jeffrey S Shinbrot

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Objection to Debtor's Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **11/2/2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Susan Titus Collins    scollins@counsel.lacounty.gov
- Eryk R Escobar    eryk.r.escobar@usdoj.gov
- Marc C Forsythe    kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com
- Stella A Havkin    stella@havkinandshrago.com, havkinlaw@earthlink.net;shavkinesq@gmail.com
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
- Michael Simon    msimon@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **11/2/2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/2/2021 | Lynnette Garrett | /s/ *Lynnette Garrett* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.